1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NORMAN IVORY,                          No.  2:12-cv-2902 WBS AC P

12              Plaintiff,

13        v.                                FINDINGS & RECOMMENDATIONS

14   R. MIRANDA,

15              Defendant.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed

18   pursuant to 42 U.S.C § 1983.  This action is proceeding on the first amended complaint.  ECF No.

19   12.  The court currently has before it the parties' fully briefed motions for summary judgment.

20   ECF Nos. 47, 55.

21   I.    Procedural History

22        On December 11, 2012,[1] plaintiff filed his original complaint alleging that defendant

23   Miranda had violated his rights under the Americans with Disabilities Act (ADA) and the Eighth

24   Amendment by changing his disability placement status from disability impacting placement

25   (DPH) to disability not impacting placement (DNH) and by discontinuing his chronos for a lower

26   bunk and knee brace.  ECF No. 3 at 6, 12-13.  He also made allegations against various Doe

27   
28   _____

[1]  Since plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule.  See
Houston v. Lack, 487 U.S. 266, 276 (1988).

                                         1

1   defendants.  ECF No. 3.  On January 17, 2013, the court dismissed the Doe defendants with the

2   option to amend within twenty-eight days.  ECF No. 10.  On January 30, 2013, plaintiff filed an

3   amended complaint containing only the allegations against defendant Miranda.  ECF No. 12.

4        Service was ordered on defendant Miranda (ECF No. 15), and defendant filed a motion to

5   dismiss for failure to state a claim (ECF No. 20).  The motion to dismiss was partially granted and

6   plaintiff's ADA claim was dismissed without leave to amend.  ECF Nos. 29, 33.  Defendant

7   answered the Eighth Amendment claim (ECF No. 34) and after the close of discovery, both

8   parties filed motions for summary judgment (ECF Nos. 47, 55).

9        II.     Plaintiff's Allegations

10       Plaintiff alleges that he was transferred on November 1, 2012, to High Desert State Prison

11  (HDSP), where defendant Miranda was employed as a physician's assistant.  ECF No. 12 at 2.

12  Upon plaintiff's arrival at HDSP, defendant changed plaintiff's disability status from DPH to

13  DNH and discontinued his chronos for a lower tier/lower bunk and knee brace.  Id.  Plaintiff

14  alleges that this was done "without performing any kind of medical examination to determine if

15  such action was warranted."  Id.  Plaintiff further alleges that he suffers from many problems with

16  his knee as the result of an old football injury that required reconstructive surgery, and that

17  defendant's discontinuation of his chronos led to his assignment to an upper bunk and that he

18  injured himself and aggravated his existing conditions when he fell trying to get up and down

19  from the bunk.  Id. at 2-3.

20       III.    Legal Standards for Summary Judgment

21       Summary judgment is appropriate when the moving party "shows that there is no genuine

22  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

23  Civ. P. 56(a).

24       Under summary judgment practice, "[t]he moving party initially bears the burden of

25  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d

26  376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving

27  party may accomplish this by "citing to particular parts of materials in the record, including

28  depositions, documents, electronically stored information, affidavits or declarations, stipulations

2

1    (including those made for purposes of the motion only), admission, interrogatory answers, or

2    other materials" or by showing that such materials "do not establish the absence or presence of a

3    genuine dispute, or that the adverse party cannot produce admissible evidence to support the

4    fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  "Where the non-moving party bears the burden of proof

5    at trial, the moving party need only prove that there is an absence of evidence to support the non-

6    moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also

7    Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time

8    for discovery and upon motion, against a party who fails to make a showing sufficient to establish

9    the existence of an element essential to that party's case, and on which that party will bear the

10   burden of proof at trial." See Celotex, 477 U.S. at 322.  "[A] complete failure of proof

11   concerning an essential element of the nonmoving party's case necessarily renders all other facts

12   immaterial." Id. at 323.  In such a circumstance, summary judgment should be granted, "so long

13   as whatever is before the district court demonstrates that the standard for entry of summary

14   judgment, as set forth in Rule 56(c), is satisfied." Id.

15        If the moving party meets its initial responsibility, the burden then shifts to the opposing

16   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

17   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish

18   the existence of this factual dispute, the opposing party may not rely upon the allegations or

19   denials of its pleadings but is required to tender evidence of specific facts in the form of

20   affidavits, and/or admissible discovery material, in support of its contention that the dispute

21   exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

22   demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the

23   suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

24   Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

25   dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the

26   nonmoving party," Anderson, 447 U.S. at 248.

27        In the endeavor to establish the existence of a factual dispute, the opposing party need not

28   establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

3

1    factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

2    truth at trial.'"   T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities

3    Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the

4    pleadings and to assess the proof in order to see whether there is a genuine need for trial."

5    Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

6         "In evaluating the evidence to determine whether there is a genuine issue of fact," the

7    court draws "all inferences supported by the evidence in favor of the non-moving party."  Walls

8    v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's

9    obligation to produce a factual predicate from which the inference may be drawn.  See Richards

10   v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine

11   issue, the opposing party "must do more than simply show that there is some metaphysical doubt

12   as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record

13   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

14   'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

15        On February 3, 2014, the defendant served plaintiff with notice of the requirements for

16   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 55.  See

17   Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960

18   (9th Cir. 1998) (movant may provide notice) (en banc), cert. denied, 527 U.S. 1035 (1999).

19        IV.    Defendant's Motion for Summary Judgment

20        Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust his

21   administrative remedies prior to bringing suit as required by the Prison Litigation Reform Act, 42

22   U.S.C. § 1997e(a).  ECF No. 55.  Plaintiff responds by arguing that he was threatened by

23   correctional staff and prevented from exhausting his administrative remedies and alternatively

24   that his remedies were exhausted as to some claims.  ECF No. 57.

25        A.    Legal Standards for Exhaustion

26             1. Prison Litigation Reform Act

27        Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

28   subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the PLRA,

4

1   "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

2   any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

3   such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v.

4   Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

5   seeking redress for prison circumstances or occurrences").  "The PLRA mandates that inmates

6   exhaust all available administrative remedies before filing 'any suit challenging prison

7   conditions,' including, but not limited to, suits under § 1983."  Albino v. Baca, 747 F.3d 1162,

8   1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

9        Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones

10  v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

11  available administrative remedy, and that the prisoner did not exhaust that available remedy."

12  Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir.

13  1996)).  "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"

14  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original).  Therefore, the

15  defendant must produce evidence showing that a remedy is available "as a practical matter," that

16  is, it must be "capable of use; at hand."  Albino, 747 F.3d at 1171 (citations and internal

17  quotations marks omitted).

18        In reviewing the evidence, the court will consider, among other things, "information

19  provided to the prisoner concerning the operation of the grievance procedure."  Brown, 422 F.3d

20  at 937.  Such evidence "informs our determination of whether relief was, as a practical matter,

21  'available.'"  Id.  Thus, misleading—or blatantly incorrect—instructions from prison officials on

22  how to exhaust the appeal, especially when the instructions prevent exhaustion, can also excuse

23  the prisoner's exhaustion:

24        We have considered in several PLRA cases whether an
          administrative remedy was "available." In Nunez v. Duncan, 591
25        F.3d 1217 (9th Cir. 2010), we held that where a prison warden
          incorrectly implied that an inmate needed access to a nearly
26        unobtainable prison policy in order to bring a timely administrative
          appeal, "the Warden's mistake rendered Nunez's administrative
27        remedies effectively unavailable."  Id. at 1226.  In Sapp v.
          Kimbrell, 623 F.3d 813 (9th Cir. 2010), we held that where prison
28        officials declined to reach the merits of a particular grievance "for

reasons inconsistent with or unsupported by applicable regulations," administrative remedies were "effectively unavailable." Id. at 823-24.  In Marella v. Terhune, 568 F.3d 1024 (9th Cir. 2009) (per curiam), we reversed a district court's dismissal of a PLRA case for failure to exhaust because the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance.  Id. at 1027-28.  We also noted that Marella was not required to exhaust a remedy that he had been reliably informed was not available to him.  Id. at 1027.

Albino, 747 F.3d at 1173.  When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d at 1168.

A prisoner must exhaust his administrative remedies for constitutional claims prior to asserting them in a civil rights complaint.  42 U.S.C. § 1997e(a); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  A complaint may be amended to add new claims so long as the administrative remedies for the new claims are exhausted prior to amendment.  Cano v. Taylor, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (new claims added to a lawsuit via amendment that are exhausted prior to the amendment comply with the exhaustion requirement); Rhodes v. Robinson, 621 F.3d 1002, 1007 (9th Cir. 2010) (new claims asserted in an amended complaint are to be considered by the court so long as administrative remedies with respect to those new claims are exhausted before the amended complaint is tendered to the court for filing).  However, if a prisoner exhausts a claim after bringing it before the court, his subsequent exhaustion cannot excuse his earlier failure to exhaust.  Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) ("[A prisoner] may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed.  It would be inconsistent with the objectives of the statute to let him submit his complaint any earlier than that."); McKinney, 311 F.3d at 1199 (a prisoner does not comply with exhaustion requirement by exhausting available remedies during the course of litigation).

2.  California Regulations Governing "Exhaustion" of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules.  Woodford, 548 U.S. at 90.  This review process

6

is set forth in California regulations.  Those regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  An inmate must file the initial appeal within 30 calendar days of the action being appealed, and he must file each administrative appeal within 30 calendar days of receiving an adverse decision at a lower level.  Id., § 3084.8(b).  The appeal process is initiated by the inmate's filing a "Form 602," the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested."  Id., § 3084.2(a).  Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review."  Id. § 3084.5(a), (b).  Except under circumstances that do not apply in this case, first and second level appeals are to be responded to within thirty working days from the date they are received by the appeals coordinator and third level appeals are to be responded to within sixty working days from the date they are received by the third level appeals chief.  Id., § 3084.8(c).

If the appeals coordinator allows an appeal to go forward, the inmate must pursue it through the third level of review before it is deemed "exhausted."  Id., § 3084.1(b) ("all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted").

      B.    <u>Arguments of the Parties</u>

          1.  <u>Defendant</u>

Defendant has submitted evidence which he argues shows that plaintiff did not exhaust his administrative remedies.  ECF No. 55-2 at 5-6.  Defendant also argues that to the extent that any issues were exhausted by the partial grant of the appeal which plaintiff did submit, such exhaustion did not precede this lawsuit as required.  Id. 7-8; ECF No. 59 at 1-2.  In response to plaintiff's allegation that he was prevented from exhausting because he was threatened by correctional staff, defendant argues that plaintiff was not actually deterred from utilizing the grievance process and should therefore not be excused from exhausting.  Id. at 2-3.

          2.  <u>Plaintiff</u>

It is well-established that the pleadings of pro se litigants are held to "less stringent

1    standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)

2    (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

3    govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted),

4    <u>overruled on other grounds</u>, <u>Lacey v. Maricopa County</u>, 693 F.3d 896 (9th Cir. 2012) (en banc).

5    However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"

6    and they are subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as

7    "limited access to legal materials" as well as "sources of proof." <u>Jacobsen v. Filler</u>, 790 F.2d

8    1362, 1364 n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

9    "strict literalness" with respect to the requirements of the summary judgment rule.  <u>Id.</u>

10   The court is mindful of the Ninth Circuit's more overarching caution in this context, as

11   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

12   pro se inmates and should avoid applying summary judgment rules strictly." <u>Thomas v. Ponder</u>,

13   611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, while plaintiff has largely complied with the

14   rules of procedure, the court will consider the record before it in its entirety.  However, only those

15   assertions in the opposition which have evidentiary support will be considered.

16   Plaintiff largely agrees with defendant's statement of facts regarding the grievance process

17   and the grievance he submitted.  ECF No. 58.  However, he argues that he was prevented from

18   exhausting his administrative remedies because he was threatened by correctional staff (ECF No.

19   57 at 7-9) and that the appeal that he submitted prior to the threats was partially granted, thus

20   exhausting his remedies with respect to his claim that defendant discontinued his low bunk

21   chrono (id. at 10, 13).  He also argues that the discontinuation of his knee brace chrono was

22   incidental and asks that if the court is inclined to dismiss the complaint on the grounds that he did

23   not exhaust his remedies with respect to his knee brace, that he be permitted to submit an

24   amended complaint excluding that claim.  <u>Id.</u> at 13.

25   C.    <u>Undisputed Facts</u>

26   Plaintiff submitted a health care appeal that was dated November 5, 2013, and accepted

27   for review on November 7, 2013, related to his November 1, 2013 interactions with defendant

28

Miranda.[2]  Defendant's Undisputed Statement of Facts (DSUF) [ECF No. 55-3] ¶¶ 14, 17;

Response to DSUF [ECF No. 58] ¶¶ 14, 17.  The appeal addressed plaintiff's allegations that

defendant arbitrarily discontinued his lower tier/lower bunk chrono and DPH status.  DSUF ¶ 15;

Response to DSUF ¶ 15.  The appeal does not address the discontinuance of plaintiff's chrono for

a knee brace.  DSUF ¶ 16; Response to DSUF ¶ 16.[3]

　　　　The response to plaintiff's appeal was approved on December 13, 2012, and plaintiff

received the response on December 18, 2012; his first level appeal was not complete until he

received the response.  DSUF ¶¶ 20, 23-24; Response to DSUF ¶¶ 20, 23-24.  Plaintiff's appeal

was partially granted with respect to his request for a lower bunk chrono.  DSUF ¶ 21; Response

to DSUF ¶ 21.  Plaintiff admits that he did not proceed past the first level of appeal.  Response to

DSUF ¶ 26.  Plaintiff does not allege that he submitted any other grievances related to the issues

currently before the court and appears to agree that he only filed the one relevant healthcare

appeal.  ECF No. 57; Response to DSUF ¶¶ 28, 30.

　　　　D.　　Discussion

　　　　The questions before the court are: (1) whether the first level appeal exhausted plaintiff's

remedies; (2) if it did exhaust his remedies, whether they were exhausted before plaintiff filed

suit; and (3) if plaintiff did not exhaust his remedies, whether this failure was excusable because

he was threatened by staff.

　　　　　　1.　Did Plaintiff Exhaust His Administrative Remedies?

　　　　As long as some potential remedy remained available through the administrative appeals

process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies.

Booth v. Churner, 532 U.S. 731, 741 (2001); Brown, 422 F.3d at 936-37.  However, "[a]n inmate

---

[2]  There are no disputes as to whether there was an administrative remedies policy or as to the steps of that process.  Defendant's Undisputed Statement of Facts (DSUF) [ECF No. 55-3] ¶¶ 1-9; Response to DSUF [ECF No. 58] ¶¶ 1-9.

[3]  Plaintiff objects that DSUF ¶ 16 is vague, compound, and immaterial because his primary concern was the cancellation of his low bunk chrono, which led to his injuries.  Response to DSUF ¶ 16 [ECF No. 58 at 6].  Plaintiff does not actually dispute that the appeal does not mention his knee brace and his arguments in his opposition essentially concede that he did not appeal that issue.  Id.; ECF No. 57 at 2, 13.  It is also clear from the appeal that plaintiff did not mention his knee brace.  ECF No. 55-4 at 14-17.

1    has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to

2    exhaust his administrative remedies."  Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010).

3          The parties are in agreement that plaintiff's healthcare appeal addressed his claim that

4    defendant inappropriately discontinued his lower tier/lower bunk chrono.  DSUF ¶ 15; Response

5    to DSUF ¶ 15.  The parties are also in agreement that plaintiff's appeal was partially granted and

6    he was given a lower bunk chrono.  DSUF ¶¶ 19, 21; Response to DSUF ¶¶ 19, 21.  Though

7    plaintiff does not dispute that the response to his appeal denied restoration of his lower tier

8    accommodation (Response to DSUF ¶ 21) and the chrono issued as part of plaintiff's appeal

9    indicates his lower tier chrono was discontinued (ECF No. 52 at 32), he states that he was advised

10   that at HDSP a lower bunk chrono automatically barred him from being housed on an upper tier

11   (Response to DSUF ¶ 25).  On review, the response to plaintiff's appeal does not actually

12   specifically deny the request for a lower tier chrono.  ECF No. 55-4 at 12.  It refers to plaintiff's

13   claims that his lower bunk/lower tier chrono was discontinued and states he has been provided a

14   lower bunk chrono.  Id.  It appears that plaintiff understood the lower tier/lower bunk chrono to

15   be one and the same and believed that the partial grant of his appeal also satisfied his request for a

16   lower tier chrono.  The court will therefore assume for the purposes of this analysis that plaintiff's

17   lower bunk chrono satisfied his complaint regarding a lower tier chrono.

18         Since plaintiff's request for a lower tier/lower bunk chrono was granted through the

19   appeals process, it is unclear what other relief he could have gained on those claims through the

20   appeals process, and defendant does not identify any additional relief the appeals process could

21   have afforded plaintiff on those claims.  The court therefore finds that plaintiff exhausted his

22   administrative remedies with respect to his claims that his lower tier/lower bunk chrono was

23   discontinued by defendant.

24         With respect to his claim that defendant discontinued his knee brace chrono, plaintiff

25   appears to concede that he did not exhaust his administrative remedies.  Response to DSUF ¶ 16;

26   ECF No. 57 at 2, 13.  But plaintiff also alleges that when he was interviewed for his appeal the

27   doctor told him that he could keep the knee brace if property did not take it.  Response to DSUF ¶

28   19.  In other words, plaintiff's request for a knee brace chrono, which would have prevented

10

1  property staff from taking his brace, was denied and it was entirely at property staff's discretion

2  whether to allow plaintiff to keep his brace.  In light of plaintiff's concession that he did not

3  exhaust his administrative remedies with respect to his knee brace (Response to DSUF ¶ 16; ECF

4  No. 57 at 2, 13), and the fact that plaintiff could have pursued administrative remedies to obtain a

5  knee brace chrono, the court finds that he did not exhaust his administrative remedies on his claim

6  that his knee brace chrono was discontinued.

7        Plaintiff does not dispute, and the appeal response confirms, that his request to restore his

8  DPH status was denied.  Response to DSUF ¶ 19; ECF No. 55-4 at 12.  Because plaintiff could

9  have potentially obtained restoration of his DPH status by appealing his first level response,

10  available remedies existed and the court finds that plaintiff did not exhaust his administrative

11  remedies related to the discontinuation of his DPH status.

12        2.  Did Plaintiff Exhaust His Administrative Remedies Before Bringing Suit?

13        Since plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule,

14  meaning his complaint was constructively filed the day he turned it over to prison officials for

15  mailing.  Houston, 487 U.S. 266, 276 (1988).  According to the certificate of service attached to

16  the original complaint, it was submitted to prison staff on December 11, 2012.  ECF No. 3 at 27.

17  Defendant does not challenge this date.  DSFU ¶ 27.[4]  After filing the original complaint, plaintiff

18  received the response to his first level appeal on December 18, 2012, thus completing his first

19  level appeal.[5]  Response to DSUF ¶¶ 23, 24.  He then filed his first amended complaint on

20  January 30, 2013.  ECF No. 12 at 23.

21        In order to comply with the exhaustion requirement, plaintiff must have exhausted his

22  administrative remedies prior to bringing his claims to court.  42 U.S.C. § 1997e(a); McKinney,

23

24  [4]  Plaintiff objects to DSUF ¶ 27 on the grounds that defendant has not offered any proof that he
mailed the complaint on December 11, 2012, but does not actually dispute that date or argue he
25  actually turned over his complaint on a different date.  Plaintiff's sworn certificate of service,
cited to by defendant, is sufficient to support DSUF ¶ 27.
26  [5]  Pursuant to policy, correctional staff had thirty working days to respond to plaintiff's appeal
27  from the day it was received.  Cal. Code Regs. tit. 15, § 3084.8(c).  The appeal was received
November 7, 2012 (DSUF ¶ 17), but even calculating the response deadline from November 5,
28  2012, the day plaintiff signed the appeal, the response was timely.

11

1   311 F.3d at 1199.  A complaint has been brought when the inmate submits it to the court.

2   Vanden, 449 F.3d at 1050.  Although new claims added to a lawsuit via amendment that are

3   exhausted prior to the amendment comply with the exhaustion requirement, Cano, 739 F.3d at

4   1220-21, the claims in plaintiff's amended complaint are the same claims he made in his original

5   complaint (compare ECF No. 3 with ECF No. 12).  This means that plaintiff's administrative

6   remedies must have been exhausted at the time he filed the original complaint on December 11,

7   2012.  Plaintiff agrees that his first level appeal was not complete until he received the response

8   on December 18, 2012 (Response to DSUF ¶¶ 23, 24), therefore any exhaustion of administrative

9   remedies that resulted from that appeal did not occur until December 18, 2012, a week after

10  plaintiff filed his complaint.  Even if the court considered December 13, 2012, the date the

11  response to plaintiff's appeal was approved,[6] as the date his administrative remedies were

12  exhausted, exhaustion still occurred after plaintiff filed his complaint.  Subsequent exhaustion

13  cannot excuse an earlier failure to exhaust administrative remedies prior to bringing them to the

14  court.  Vaden v. Summerhill, 449 F.3d at 1051; McKinney, 311 F.3d at 1199 (a prisoner does not

15  comply with exhaustion requirement by exhausting available remedies during the course of

16  litigation).

17          Any exhaustion of remedies as a result of plaintiff's healthcare appeal happened after

18  plaintiff filed his complaint and does not satisfy the exhaustion requirement.

19                  3.  Was Plaintiff Excused from Exhausting His Administrative Remedies?

20          Plaintiff also argues that the administrative remedies process was rendered unavailable to

21  him because he was threatened by correctional staff.  ECF No. 57 at 7-9.  He claims that he was

22  accosted by a correctional officer who told him that if he did not stop his appeals he would not

23  make it out of prison and that they would "beat, starve, and freeze [him] to death."  Id. at 8.  He

24  claims the officer then proceeded to confiscate his religious diet card and coat and sent him back

25  to his housing unit in the snow.  Id. at 9.  Plaintiff proceeded to write to the CDCR director

26  complaining of the treatment and was told to file an appeal.  Id.

27  _____

28  [6] The appeal records submitted by defendant also indicate that this is the date the first level
    appeal was closed.  ECF No. 55-4 at 19.

1    In order to establish that the failure to exhaust was excusable, plaintiff must show that:

2          "(1) the threat [of retaliation] actually did deter the plaintiff inmate
3          from lodging a grievance or pursuing a particular part of the
           process; and (2) the threat is one that would deter a reasonable
4          inmate of ordinary firmness and fortitude from lodging a grievance
           or pursuing the part of the grievance process that the inmate failed
5          to exhaust."

6    McBride v. Lopez, 791 F.3d 1115, 1120 (9th Cir. 2015) (quoting Turner v. Burnside, 541 F.3d
7    1077, 1085 (11th Cir. 2008)).

8          Although plaintiff does not offer any specifics as to when this incident occurred, this

9    information can be found in plaintiff's earlier filings.  In a sworn declaration signed January 2,

10   2013, plaintiff claimed that he was accosted by an officer that same day in response to a request

11   for interview that he submitted on December 27, 2012.  ECF No. 8.  He claims that the officer

12   threatened him and took his coat and made him walk back to his housing unit in the snow.  Id. at

13   2.  He then proceeded to make a general claim that every attempt he made to exhaust his

14   administrative remedies had "been thwarted by threat, intimidation, force, oppression and

     unprofessional misconduct."  Id. at 3.  A subsequent declaration filed by plaintiff stated that the
15
     incident was related to his religious diet.  ECF No. 9 at 2.
16
           Defendant argues that plaintiff's failure to exhaust is not excusable because he has not
17
     shown that the threats actually deterred him from pursuing his administrative grievance (ECF No.
18
     59 at 3) and offers evidence that plaintiff continued to submit appeals on other issues after he
19
     received the response to his healthcare appeal and the alleged threats on January 2, 2013 (ECF
20
     No. 55-4 at 19; ECF No. 59-2 at 10-11).
21
           On the record presented here, the court cannot find that plaintiff was actually deterred
22
     from pursuing his appeal.  First, plaintiff admits that he wrote a letter to the CDCR director
23
     immediately following the confrontation complaining of the treatment he was receiving.  ECF
24
     No. 57 at 9.  Next, the records submitted by defendant show that plaintiff proceeded to file
25
     appeals on other issues on December 20, 2012 (ECF No. 59-2 at 10), January 22, 2013 (id. at 11),
26
     and February 25, 2013 (ECF No. 55-4).  To the extent plaintiff may claim he was only being
27
     prevented from pursuing administrative remedies related to the issues in this case, his previous
28

                                                   13

declarations allege that the threats were in relation to his appeals related to his classification and religious diet.  ECF No. 4 at 6; ECF No. 9 at 1-4.  Finally, the day plaintiff received the response to his healthcare appeal he signed a declaration in which he stated that he had received a response to his first level appeal which had been partially granted.  ECF No. 5.  He stated that "I believe this effectively exhausts my administrative remedy concerning plaintiff's first claim for relief concerning plaintiff's claim of deliberate indifference to his medical needs."  Id. at 2.

On these facts, the court finds that plaintiff was not actually deterred from pursuing his appeal because of threats of retaliation, but instead did not proceed further because he believed that his partially granted first-level appeal exhausted his administrative remedies.  Plaintiff was therefore not excused from exhausting his administrative remedies prior to filing suit.

E.      Conclusion

For the foregoing reasons, the court finds that plaintiff did not exhaust his administrative remedies prior to bringing this lawsuit nor was he excused from exhausting his administrative remedies.  Defendant's motion for summary judgment should therefore be granted.

V.      Plaintiff's Motion for Summary Judgment

Because the undersigned recommends dismissal of the first amended complaint based on plaintiff's failure to exhaust his administrative remedies, plaintiff's motion for summary judgment should be denied as moot.

VI.     Conclusion

For the reasons set forth above, defendant's motion for summary judgment should be granted for plaintiff's failure to exhaust administrative remedies and plaintiff's motion for summary judgment should be denied as moot.

IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion for summary judgment (ECF No. 55) be granted and the first amended complaint be dismissed without prejudice for failure to exhaust administrative remedies.

2.  Plaintiff's motion for summary judgment (ECF No. 47) be denied as moot.

3.  Judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge

14

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

2   after being served with these findings and recommendations, any party may file written

3   objections with the court and serve a copy on all parties.  Such a document should be captioned

4   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

5   objections shall be served and filed within fourteen days after service of the objections.  The

6   parties are advised that failure to file objections within the specified time may waive the right to

7   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8   DATED: September 23, 2015

9   _____

10   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28